*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHAWN MICHAEL BRIGOLIN,

Defendant-Appellant.

UNPUBLISHED
July 17, 2026
11:25 AM

No. 372503
Oakland Circuit Court
LC No. 2023-284767-FH

Before: MALDONADO, P.J., and RIORDAN and YOUNG, JJ.

PER CURIAM.

Shawn Michael Brigolin appeals as of right his jury-trial convictions of possession of methamphetamine, MCL 333.7402(2)(b)(*i*); possession of less than 25 grams of cocaine, MCL 333.7402(2)(a)(*v*); possession of less than 25 grams of oxycodone hydrochloride, MCL 333.7402(2)(a)(*v*); possession of alprazolam, MCL 333.7402(2)(b)(*ii*); and four counts of possession of a firearm in the commission of a felony (felony-firearm), MCL 750.227b. Brigolin was sentenced to 23 to 120 months' imprisonment for the possession of methamphetamine conviction; 180 days in jail each for the convictions of possession of cocaine, possession of oxycodone hydrochloride, and possession of alprazolam; and two years' imprisonment for each felony-firearm conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose from the execution of a search warrant at Brigolin's mobile home by members of the Oakland County Sheriff's Office Narcotic Enforcement Team. Detective Tyler Dearing-Manning of the Auburn Hills Police Department and member of the Narcotics Enforcement Team was the officer in charge and investigated Brigolin before the raid. Dearing-Manning received information from a confidential informant concerning suspected drug trafficking at Brigolin's residence. Dearing-Manning surveilled Brigolin's home. Dearing-Manning also searched Brigolin's trash and found documents addressed to Brigolin, a scale, and a plastic bag with the corners removed. The plastic bag tested positive for methamphetamine. Dearing-Manning obtained a search warrant for Brigolin's home.

-1-

When executing the search warrant, the officers found Brigolin and four other occupants in the home. Dearing-Manning interviewed Brigolin, who claimed he allowed the occupants to stay in his home because they had no place to live. Brigolin was aware the occupants used drugs but maintained he was not involved. Brigolin informed Dearing-Manning that Brigolin's neighbor, Michael Cooper, authorized Brigolin to maintain and dispense Cooper's prescription medications.

Dearing-Manning and the officers searched Brigolin's home. From the office, they recovered (1) methamphetamine stored in a ceramic mushroom on the desk; (2) cocaine stored in a silicone tube found on a cigar box; (3) a pill bottle containing oxycodone and prescribed to Cooper was found inside the cigar box; (4) two alprazolam pills and eleven Adderall pills from a tin in the bottom drawer of a storage tray; and (5) a gun and three bullets from a GoPro case stored in the middle drawer of the storage tray. Dearing-Manning recovered methamphetamine from (1) the purse of an occupant; (2) a table in the living room; (3) a small tin; and (4) a small golf bag in the kitchen. Dearing-Manning also recovered documents tying Brigolin to the home.

Dearing-Manning searched the Michigan Automated Prescription System after the raid for any prescriptions for Brigolin from 2018 to 2023, and determined Brigolin had a valid prescription for the Adderall but not for the other prescription drugs recovered. Brigolin was charged with possession of all the other unprescribed substances as well as unlawfully possessing firearms. The prosecution presented a plea offer for Brigolin to plead guilty as charged with a sentencing agreement of two years on the felony-firearm convictions and the drug charges would be resolved with a fine. Brigolin rejected the offer and went to trial.

Before trial commenced, Brigolin requested a special jury instruction. Brigolin requested the language he "had no legal right to possess" the prescription drugs be added to M Crim JI 12.5 (Unlawful Possession of a Controlled Substance). The prosecution objected, claiming Brigolin's request was not supported by the facts. The trial court held the issue in abeyance until the close of proofs.

After Brigolin rested, he argued that he presented evidence that he was authorized to dispense Cooper's medications, entitling him to the special jury instruction. Brigolin also argued he was entitled to M Crim JI 12.4a (Exception to or Exemption from Controlled Substances Act). The trial court denied Brigolin's request for the jury instructions. Brigolin was found guilty as charged and sentenced as noted. This appeal followed.

While in this Court, Brigolin moved the trial court for a new trial or evidentiary hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). Brigolin claimed defense counsel was ineffective for (1) failing to move to suppress the search warrant and (2) offering deficient advice during plea negotiations. Brigolin claimed there was no probable cause to justify the search warrant, and defense counsel advised Brigolin his sentence in this case would be served consecutively to any other sentence Brigolin received. Brigolin also argued the jury's verdict went against the great weight of evidence, citing the lack of evidence establishing knowledge of the drugs. Brigolin also moved to correct his sentence, claiming the trial court erred when it assessed 10 points for offense variable (OV) 14 (Offender's Role). Brigolin argued there was no evidence he was the leader.

The trial court denied Brigolin's motions, finding (a) defense counsel was not ineffective, (b) sufficient evidence in the warrant affidavit established probable cause and (c) no evidence defense counsel provided erroneous advice during the plea negotiations. The trial court relied on the prosecution's response, which contained an affidavit by defense counsel attesting to her advice and Brigolin's responses. Brigolin moved in this Court for remand, arguing the trial court erred when it denied his motion for a new trial or evidentiary hearing. This Court denied Brigolin's motion without prejudice. *People v Brigolin*, unpublished order of the Court of Appeal, entered November 26, 2025 (Docket No. 372503).

## II. INEFFECTIVE ASSISTANCE

Brigolin claims defense counsel was ineffective. We disagree.

### A. STANDARDS OF REVIEW

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "[A] trial court's factual findings in that regard are reviewed for clear error and cannot be disturbed unless 'the reviewing court is left with a definite and firm conviction that the trial court made a mistake.' " *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014), quoting *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court and the trial court denied the request for a *Ginther* hearing and as a result, "our review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

### B. ANALYSIS

"To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010). "Trial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021). To demonstrate deficient performance, "the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Armstrong*, 490 Mich at 290. "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The defendant then must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290. "Defendant also 'bears the burden of establishing the factual predicate for his claim.' " *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Brigolin claims defense counsel was ineffective for (1) failing to move to suppress the search warrant; (2) providing erroneous advice during plea negotiations; and (3) failing to object to the assignment of points for offense variable (OV) 14. We disagree.

1. MOTION TO SUPPRESS

Brigolin claims defense counsel was ineffective for failing to move to suppress the search warrant because there was no probable cause to justify the warrant. Brigolin argues "any reasonable attorney" would have moved to suppress the search warrant on the basis of the facts of the case. Brigolin's argument is not persuasive.

"Generally, in order for a search executed pursuant to a warrant to be valid, the warrant must be based on probable cause." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004). " 'Probable cause exists when a person of reasonable caution would be justified in concluding that evidence of criminal conduct could be found in a stated place to be searched.' " *People v Nunez*, 242 Mich App 610, 612; 619 NW2d 550 (2000), quoting *People v Stumpf*, 196 Mich App 218, 227; 492 NW2d 795 (1992). "A magistrate's finding of probable cause and decision to issue a search warrant are reviewed to ensure that the magistrate possessed a 'substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing. . . .' " *People v Franklin*, 500 Mich 92, 101; 894 NW2d 561 (2017), quoting *Illinois v Gates*, 462 US 213, 236; 103 S Ct 2317; 76 L Ed 2d 527 (1983).

"In assessing a magistrate's determination in regard to probable cause, the search warrant and underlying affidavit must be read in a commonsense and realistic manner, and a reviewing court must pay deference to a magistrate's conclusion that probable cause existed." *Nunez*, 242 Mich App at 612-613. "Such deference requires the reviewing court to determine whether a reasonably cautious person could have concluded that the finding of probable cause had a substantial basis." *Id*. at 613 (quotation marks and citation omitted). "[S]ome context must be supplied by the affidavit and warrant that connects the particularized descriptions of the venue to be searched and the objects to be seized with the criminal behavior that is suspected, for even particularized descriptions will not always speak for themselves in evidencing criminality." *People v Hughes*, 506 Mich 512, 538; 958 NW2d 98 (2020).

Brigolin claims parts C and E of the third paragraph of the search warrant affidavit were insufficient to establish probable cause. Those paragraphs provide:

(C) Affiant is in charge of an ongoing narcotics investigation involving 351 N Squirrel Rd, lot 111, City of Auburn Hills, County of Oakland, State of Michigan

1. Affiant has received information from a Confidential Informant that Shawn Michael Brigolin resides at, and is suspected of dealing controlled substances, out of 351 N Squirrel Rd, Lot 111, Auburn Hills, MI, 48326.

2. Affiant has been able to confirm the information give [sic] by the Confidential Informant (CI) through surveillance.

3. Through physical surveillance, affiant has seen Shawn Michael Brigolin enter the residence utilizing the main door off of the porch.

4. A query of CLEMIS revealed that Brigolin has multiple contacts at the location of 351 N Squirrel Rd, lot 111, Auburn Hills, MI, 48326. Since the

beginning of 2022, there are nine CLEMIS contacts that have Brigolin's listed address as 351 N Squirrel Rd, Lot 111, Aubmn Hills, MI, 48326.

5. A CLEMIS inquiry also shows that Brigolin received a traffic citation (22OS22646) driving a 2010 Ford Focus (black in color) with MI plate of DBJ574. Through physical surveillance, Affiant has seen this vehicle being driven by Brigolin, and it has also been located at the residence (351 N Squirrel Rd, lot 111, Auburn Hills, MI, 48326) on multiple different occasions.

(E) On 4/11/2023, Affiant conducted a trash pull at 351 N Squirrel Rd, Lot 111, Auburn Hills, MI. A trash pull is defined as collection of garbage abandoned at the curb of a residence intended for pickup by a municipality's sanitation company.

1. Affiant searched the collected garbage and located the following:

a. Three plastic bags which were twisted and bad the corner(s) ripped off. One of the bags contained a crystalized residue which field tested positive for the presence of amphetamines/meth.

i. Affiant has received training in the use of narcotics field test kits and can distinguish between a positive and negative result.

b. One corner bag.

c. A digital scale.

d. Proof to a Shawn Brigolin at 3052 Eastwood Dr, Rochester, MI, 48309 (with a listed birth year of 1975) dated from 4/3/2023. A sticky note with "Shawn medical supplies" written on it.

Brigolin claims there was no evidence of illegal activity in part C, but he is incorrect. The affidavit established the confidential informant supplied Dearing-Manning with information evidencing Brigolin's involvement in selling drugs. There was some evidence of illegal activity, but Brigolin challenges information from the confidential informant, arguing it was not corroborated and could not be used to establish probable cause.

If a search warrant affidavit references information supplied by a confidential informant, the affidavit must contain factual assertions "from which a magistrate could find that the information supplied was based on personal knowledge and that either the unnamed person was credible or the information was reliable." *People v Poole*, 218 Mich App 702, 706; 555 NW2d 485 (1996). While a confidential informant was used, Dearing-Manning provided sufficient evidence and facts establishing the informant's credibility. After receiving the information from the informant, Dearing-Manning conducted surveillance at the mobile home. He observed Brigolin enter and leave multiple times, and identified a vehicle associated with Brigolin at the mobile home. Thus, it was clear from Dearing-Manning's own observations that Brigolin was a resident at the suspect property. The presence of contraband at the suspect property also became clear. Dearing-Manning conducted a trash pull at the mobile home on April 11, 2023, and found

(1) a plastic bag with the corners ripped off, which tested positive for methamphetamine, (2) a scale, and (3) documents with the Eastwood address dated April 3, 2011.[1]

While Brigolin had a valid prescription for Adderall, this was not known by Dearing-Manning when he conducted the trash pull. Further, the trash tested positive for methamphetamine. Evidence established a reasonable probability that methamphetamine would be found in Brigolin's home. See *People v Mitchell*, 138 Mich App 163, 168–69; 360 NW2d 158, 161 (1984) ("The possibility that some innocent explanation might exist does not deprive an officer of probable cause to arrest."). Brigolin also challenges the ripeness of the trash pull, arguing there was no evidence establishing the length of time the trash was in the bin. Brigolin is correct that time is a factor to consider. See *People v Russo*, 439 Mich 584, 605; 487 NW2d 698 (1992) ("[I]t cannot be assumed that evidence of a crime will remain indefinitely in a given place."). However,

> [t]ime as a factor in the determination of probable cause to search is to be weighed and balanced in light of other variables in the equation, such as whether the crime is a single instance or an ongoing pattern of protracted violations, whether the inherent nature of a scheme suggests that it is probably continuing, and the nature of the property sought, that is, whether it is likely to be promptly disposed of or retained by the person committing the offense. [*Id*. at 605-606.]

In this case, Dearing-Manning conducted the trash pull the same day he procured the search warrant. While there was no evidence establishing how long the trash was in the bin, the trash pull was close in time to the confidential informant claiming that Brigolin was selling drugs. This suggests an "ongoing pattern of protracted violations." *Id*. at 605. The totality of evidence demonstrates the items recovered reliably point to more evidence of illegal activity inside Brigolin's home.

Brigolin contends the trash pull was insufficient to establish probable cause on its own, and disagrees with the holding in *People v Keller*, 479 Mich 467, 482-483; 739 NW2d 505 (2007). In *Keller*, our Supreme Court determined marijuana collected from a trash pull was sufficient on its own to establish probable cause to justify a warrant for narcotics. *Id*. Brigolin relies on *United States v Abernathy*, 843 F3d 243 (CA 6, 2016), for support. In *Abernathy*, the United States Court

---

[1] There was also trash recovered with Brigolin's name containing a different address but that does not undermine the additional evidence in support of probable cause. Dearing-Manning observed Brigolin leave and return to the home multiple times, and identified a vehicle associated with Brigolin at the home. While there were documents with a different address, the evidence supplied in the affidavit established Brigolin's presence at the home.

of Appeals for the Sixth Circuit determined evidence taken from a trash pull was "insufficient, standing alone,[] to create probable cause." *Id*. at 256-257[2] (footnote omitted).

As Brigolin notes, *Keller* supports a finding of probable cause from a trash pull, and this Court is bound to follow it. See *People v Adamowicz (On Second Remand)*, 346 Mich App 213, 221; 12 NW3d 35 (2023) (noting that this Court is bound to apply a Supreme Court holding that has not been reversed or modified). Even if *Abernathy* controls, this case is in keeping with *Abernathy*. "It is well established in this Circuit that drug paraphernalia recovered from a trash pull establishes probable cause to search a home when combined with other evidence of the resident's involvement in drug crimes." *Abernathy*, 843 F3d at 251-252. Dearing-Manning relied on a tip from a confidential informant identifying drug trafficking at Brigolin's home and the items recovered from the trash pull when he authored the search warrant. Because the warrant was premised on the confidential informant's information and the evidence collected from the trash pull, there was sufficient probable cause under *Keller* and *Abernathy*. *Keller*, 479 Mich at 482-483; *Abernathy*, 843 F3d at 251-252.

Given the corroborating evidence collected from the trash pull and the confidential informant's information, there was sufficient evidence to establish probable cause. See *Nunez*, 242 Mich App at 612, quoting *Stumpf*, 196 Mich App at 227 (" 'Probable cause exists when a person of reasonable caution would be justified in concluding that evidence of criminal conduct could be found in a stated place to be searched.' "). Defense counsel stated in her affidavit she did not move to suppress the warrant because the trash pull was supported by the caselaw. Defense counsel's decision was reasonable. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

### 2. PLEA NEGOTIATIONS

Brigolin argues defense counsel provided erroneous advice by informing him the two-year sentence agreement in this case would run consecutive to any sentence Brigolin would receive in his other pending cases. Brigolin provides two affidavits in support of his claim. In the first affidavit, appellate counsel claims Brigolin informed him: (1) defense counsel advised Brigolin his sentence agreement in this case would run consecutively to "any other sentence given on any other case;" (2) Brigolin relied on defense counsel's advice when he rejected the plea offer; and (3) had Brigolin been aware his sentence in this case would be concurrent to any other sentence, he would have accepted the plea offer. Brigolin submitted his own affidavit in his motion for remand in this Court and in his brief on appeal, claiming: (1) defense counsel informed him his two-year sentence in this case would run consecutively to his 23 month sentence in his other case; (2) defense counsel provided this advice multiple times and consistently stated his sentences would be consecutive; (3) defense counsel stated he "had nothing to lose by going to trial" in this case;

---

[2] *Abernathy* is not binding precedent. See MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court. . . .").

(4) he rejected the plea offer on advice of defense counsel; and (5) had he known his sentences would have been concurrent, he would have accepted the plea offer.

Brigolin is correct, felony-firearm convictions can only be consecutive to the predicate felony. See *People v Clark*, 463 Mich 459, 463; 619 NW2d 538 (2000) (footnote omitted) ("From the plain language of the felony-firearm statute,[] it is evident that the Legislature intended that a felony-firearm sentence be consecutive only to the sentence for a specific underlying felony."). However, defense counsel provided an affidavit contesting Brigolin's claim. In her affidavit, defense counsel attested: (1) Brigolin's statement concerning her advice about the sentencing agreement was untrue; (2) she informed Brigolin his sentences would run concurrent to another sentence; (3) she was Brigolin's attorney for his other cases; (4) Brigolin was never provided a sentencing agreement in his other case and did not rely on one when making his decision on the plea offer; and (5) Brigolin rejected the plea offer because he did not believe the prosecution could prove its case and did not want to serve any time in prison.

While Brigolin and defense counsel provided conflicting affidavits, which may be enough to support at least further inquiry at a *Ginther* hearing the record reflects Brigolin understood the plea offer. At the pretrial, the prosecution explained the terms of the offer, stating, "The sentence agreement is that he would serve the two years flat on the felony firearm, *and no additional time thereafter*." (Emphasis added). Brigolin rejected the plea offer at the next hearing a week later. Further, Brigolin rejected the plea offer on March 19, 2024, after counsel reiterated that Brigolin would "only receive the two years for the felony firearm" and trial commenced on June 17, 2024, affording sufficient time to discuss the issue with defense counsel or express his confusion.

While Brigolin submitted two affidavits in support of his claim, his appellate attorney's affidavit is not premised on personal knowledge. Appellate counsel affirms only what Brigolin told him about defense counsel. The only support Brigolin provides is his own affidavit. But only one affidavit is supported by the record. That is the affidavit of defense counsel. Given the pretrial record and defense counsel's affidavit, Brigolin fails to establish defense counsel's performance was deficient during plea negotiations. See *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). Accordingly, defense counsel was not ineffective. *Fyda*, 288 Mich App at 450.

### 3. OV OBJECTION

Brigolin claims defense counsel was ineffective for failing to object to the assignment of points to OV 14 because there was no evidence to support the trial court's assessment.

"The trial court's factual determinations regarding offense variables must be supported by a preponderance of the evidence." *People v Muniz*, 343 Mich App 437, 452-453; 997 NW2d 325 (2022). "Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report (PSIR)], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "A trial court determines the sentencing variables by reference to the record, using the standard of preponderance of the evidence." *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "A trial court may draw inferences regarding a defendant's

behavior from objective evidence when sentencing the defendant." *People v Dickinson*, 321 Mich App 1, 23; 909 NW2d 24 (2017).

OV 14 seeks to determine the offender's role in the crime. MCL 777.44(1). A trial court assesses 10 points when "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). When assessing OV 14, "[t]he entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a). When defining what constitutes a leader for OV 14, this Court has stated: "To 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Rhodes*, 305 Mich App 85, 90; 849 NW2d 417 (2014). The plain meaning of a "multiple offender situation" contemplated in OV 14 consists of a situation where more than one person violated the law in a group. *Dickinson*, 321 Mich App at 23.

Brigolin argues there was no evidence he directed the other occupants to use or possess methamphetamine or cocaine. Brigolin also asserts he was never directed to dispense Cooper's medications and there was no evidence identifying other offenders in the case.

While there was no direct evidence of Brigolin directing the occupants or acting as the leader, there was circumstantial evidence allowing the trial court to draw an inference of leadership. Brigolin informed Dearing-Manning he resided in the home and controlled who lived with him. Brigolin allowed the other occupants to stay in his home and provided for them financially. In his interview, Brigolin told the occupants to clean up after themselves because he did not want drugs in his home, demonstrating control and knowledge of drug use.

Brigolin was arrested in his home office, where most of the drugs were recovered. As discussed, there was evidence Brigolin used the office for his personal business, such as using the computer to submit payments online under his name or accessing his probation record. Brigolin explained in his interview he was attempting to complete his probation when he was arrested. Brigolin claims he was the sole offender in this case but is incorrect, because Darner was also charged, and Brigolin's PSIR identified two of the occupants as codefendants.

Brigolin claims Cooper did not give him permission to dispense his medications, but his position contradicts his claim on appeal. As discussed, Brigolin argued Cooper authorized him to dispense his medications. Brigolin told Dearing-Manning in his interview he was authorized to dispense those medications. Brigolin's admissions demonstrate that he was aware of his leadership role in Cooper's medications.

There was sufficient evidence for the trial court to infer Brigolin was the leader of the group. See *Rhodes*, 305 Mich App at 90 ("To 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting."). Accordingly, the trial court did not err when it assessed 10 points for OV 14. Thus, defense counsel's decision not to object to the scoring of OV 14 was reasonable given the factual circumstances of the case. Because there was no issue with the scoring of OV 14, defense counsel's performance was not deficient, and Brigolin cannot establish ineffective assistance. *Fyda*, 288 Mich App at 450.

### III. SUFFICIENCY OF THE EVIDENCE

Brigolin claims there was insufficient evidence to support his convictions. We disagree.

### A. STANDARDS OF REVIEW

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "In examining the sufficiency of the evidence, 'this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt.' " *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012), quoting *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

### B. ANALYSIS

"A challenge to the sufficiency of evidence underpinning a conviction implicates due process. Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt." *People v Darga*, 349 Mich App 1, 14; 27 NW3d 298 (2023) (quotation marks and citation omitted). " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Evidence is reviewed in a light most favorable to the prosecution. *Reese*, 491 Mich at 139. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Brigolin challenges his convictions of: (1) possession of methamphetamine; (2) possession of cocaine; and (3) felony-firearm. He does not challenge his convictions of possession of oxycodone or alprazolam.

### 1. POSSESSION CONVICTIONS

Brigolin claims there was insufficient evidence to sustain his convictions of possession of methamphetamine and cocaine because there was no evidence he possessed either substance. "[T]o obtain a conviction under MCL 333.7403(2)(b), the prosecution must prove that the defendant 'knowingly or intentionally possess[ed]' methamphetamine." *People v Baham*, 321 Mich App 228, 247; 909 NW2d 836 (2017). To secure a conviction of possession of cocaine under MCL 333.7403(2)(a)(*v*), the prosecution must prove: (1) the defendant possessed cocaine; (2) defendant knew he was possessing cocaine; and (3) the substance weighed less than 26 grams. MCL 333.7403(2)(a)(*v*); accord *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

Brigolin stipulated to the recovered substances being methamphetamine and cocaine, and the forensic report admitted at trial identified cocaine and methamphetamine in the samples collected. The forensic report also indicated that the cocaine sample weighed 0.11 grams.

Accordingly, the prosecution was required to prove Brigolin knowingly possessed cocaine and methamphetamine.

"The element of possession in defendant's charges requires a showing of 'dominion or right of control over the drug with knowledge of its presence and character.'" *People v McKinney*, 258 Mich App 157, 165-166; 670 NW2d 254 (2003), quoting *Nunez*, 242 Mich App at 615. Possession can be either actual or constructive and joint or exclusive. *McKinney*, 258 Mich App at 166. "The essential issue is whether the defendant exercised dominion or control over the substance." *Id*. "Possession can be proved by circumstantial or direct evidence and is a factual question for the trier of fact." *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011).

Brigolin claims there is no evidence to support a finding of constructive possession but ignores his statements to Dearing-Manning. Brigolin was the only individual in his office during the raid and asserted he owned the home. Documents recovered at the home and in the office identified Brigolin as the homeowner. The cocaine and methamphetamine were located on a desk in the office inside small containers. While the drugs were not in plain sight, the containers were. Dearing-Manning observed the ceramic mushroom and silicone container on the desktop. The containers were readily accessible and in plain view. Given the location where he was arrested, the accessibility of the containers, and Brigolin statements, there was sufficient circumstantial evidence for a jury to determine Brigolin "exercised dominion or control over the substance." *McKinney*, 258 Mich App at 166.

Brigolin also challenges the knowledge component of possession, arguing there was no evidence Brigolin knew methamphetamine and cocaine were in the containers. Brigolin informed Dearing-Manning in his interview he was aware the occupants he let live with him used and possessed methamphetamine and admitted there was a small amount of methamphetamine inside the home. The trash pull recovered a scale and plastic bag, which tested positive for methamphetamine. "[C]ircumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *Miller*, 326 Mich App at 735. Brigolin maintains his awareness of the occupants' drug use generally is insufficient to support a finding of knowledge of each drug specifically. The jury is allowed to make reasonable inferences. *Oros*, 502 Mich at 239. Given Brigolin's statements to Dearing-Manning, the jury could (and did) reasonably infer Brigolin knew of the drugs in the home.

When viewed in a light most favorable to the prosecution, there was sufficient evidence to establish: (1) the substances were methamphetamine and cocaine; (2) the amount of cocaine was under 25 grams; (3) Brigolin had knowledge of the methamphetamine and cocaine; and (4) Brigolin constructively possessed the methamphetamine and cocaine. Accordingly, there was sufficient evidence to sustain Brigolin's convictions of possession of methamphetamine and cocaine.

## 2. FELONY-FIREARM

Brigolin challenges his convictions of felony-firearm. "'The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.'" *People v Bass*, 317 Mich App 241, 268-269; 893 NW2d 140 (2016), quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). As discussed, there was sufficient

evidence to support Brigolin convictions of possession of methamphetamine and cocaine. Brigolin does not challenge his convictions of possession of oxycodone and possession of alprazolam. Accordingly, this court does not engage with the latter element of felony-firearm—the commission of a felony. We only review this record to inquire whether the prosecution established Brigolin possessed a firearm.

For felony-firearm, possession can be "actual or constructive, joint or exclusive." *Johnson*, 293 Mich App at 83. " '[A] person has constructive possession if there is proximity to the article together with indicia of control. Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant.' " *Id*., quoting *People v Hill*, 433 Mich 464, 470-471; 446 NW2d 140 (1989). "Possession can be proved by circumstantial or direct evidence and is a factual question for the trier of fact." *Id*.

Brigolin argues there was no evidence he was aware the firearm was inside the GoPro container or exercised control over it. With respect to control, Brigolin was in the office where the firearm was recovered. The container the firearm was recovered from was close to Brigolin's office chair and desk, establishing proximity. The firearm was recovered from inside a case, but there was no evidence the case was locked. While the magazine was removed from the firearm, Dearing-Manning testified the firearm was in one piece. This evidence indicates ease of access.

The occupants were in other rooms in the mobile home. Brigolin had documents with his name on them in the office concerning his probation or parole status, and Dearing-Manning testified Brigolin's computer displayed an "order confirmation from a court with [his] name on it." There was evidence establishing Brigolin exercised control over the items in his office and kept the office for his personal use.

Brigolin claimed he was unaware of the firearm during his interview with Dearing-Manning but also quickly identified Cooper as the owner. However, the firearm was registered to Matthew Parker after Dearing-Manning searched Law Enforcement Information Network. While there was a dispute about who *owned* the gun, the jury need not believe Brigolin was the rightful owner; only that he possessed the gun. See *Kanaan*, 278 Mich App at 619.

Brigolin also claims the firearm was inoperable and his possession of it did not violate the felony-firearm statute. Brigolin concedes this issue was decided in *Peals* when the Michigan Supreme Court held:

> We decline to insert an operability requirement into the [felony-firearm] statute. We can find no basis to conclude that the phrase "may be propelled" somehow requires that the weapon be reasonably and readily operable. The statute simply does not contain any language supporting such a rule. In short, the statutory definition of "firearm" is *descriptive*. It describes the type of weapon that constitutes a "firearm," so as to distinguish it from other types of weapons. It does *not* require the current operability of the weapon. [*Peals*, 476 Mich at 650 (alteration added).]

*Peals* is good law, and this Court is bound to follow it, which Brigolin acknowledges. See *Adamowicz*, 346 Mich App at 221 (noting that this Court is bound to apply a Supreme Court holding that has not been reversed or modified).

There was evidence demonstrating Brigolin exercised control over the firearm and was aware of the firearm's presence. The jury determined the evidence established possession. *Johnson*, 293 Mich App at 83. Accordingly, there was sufficient evidence to sustain Brigolin's felony-firearm convictions.

## IV. GREAT WEIGHT

Brigolin claims his convictions for possession of methamphetamine and cocaine went against the great weight of evidence. We disagree.

### A. STANDARD OF REVIEW

"We review for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *Id*.

### B. ANALYSIS

Brigolin claims his convictions of possession of methamphetamine and cocaine, and felony-firearm were against the great weight of the evidence. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Knepper*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363191); slip op at 5 (quotation marks and citation omitted).

"[T]o obtain a conviction under MCL 333.7403(2)(b), the prosecution must prove that the defendant 'knowingly or intentionally possess[ed]' methamphetamine." *Baham*, 321 Mich App at 247. To secure a conviction of possession of cocaine under MCL 333.7403(2)(a)(v), the prosecution must prove: (1) the defendant possessed cocaine; (2) defendant knew he was possessing cocaine; and (3) the substance weighed less than 26 grams. MCL 333.7403(2)(a)(v); accord *Wolfe*, 440 Mich at 516-517. " 'The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.' " *Bass*, 317 Mich App at 268-269, quoting *Avant*, 235 Mich App at 505.

Brigolin challenges the knowledge requirement of constructive possession, claiming there was no evidence to support a finding he had knowledge of the methamphetamine, cocaine, or firearm. " '[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant.' " *Johnson*, 293 Mich App at 83, quoting *Hill*, 433 Mich at 470-471. "Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *Miller*, 326 Mich App at 735.

It appears the trial court did not address Brigolin's great-weight challenge. While Brigolin brought the issue to the trial court's attention, the trial court did not present any findings on the issue when it denied his motion for a new trial. The trial court mentioned it relied on the prosecution's response when issuing its ruling, but the prosecution did not respond to Brigolin's great-weight challenge apart from discussing the standard of review for the issue.

As an error-correcting court, this Court is left with nothing to review. See *People v Blevins*, 314 Mich App 339, 352 n 5; 886 NW2d 456 (2016) ("The Court of Appeals is an error-correcting court . . ."), see also *Lacalamita*, 286 Mich App at 469 ("We review for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence."). However, remand is unnecessary because Brigolin's argument for his great-weight challenge is the same as his argument for his sufficiency challenge, claiming there was no evidence he had knowledge of the methamphetamine or cocaine. We addressed this issue above and noted there was sufficient evidence to find knowledge for Brigolin's convictions of possession of methamphetamine and cocaine. While we acknowledge sufficiency and great weight are distinct issues, Brigolin does not highlight any countervailing evidence beyond that we have identified in support of the verdict when addressing sufficiency. Consequently, Brigolin failed to demonstrate the evidence "preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Knepper*, ___ Mich App at ___; slip op at 5.

## V. JURY INSTRUCTIONS

Brigolin claims the trial court erred when it denied his requested jury instructions. We disagree.

### A. STANDARDS OF REVIEW

"Questions of law, including questions of the applicability of jury instructions, are reviewed de novo." *People v Perez*, 469 Mich 415, 418; 670 NW2d 655 (2003). "De novo review means we review this issue independently, without any required deference to the courts below." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). "We must consider the instructions as a whole, rather than piecemeal, to determine whether any error occurred." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). This Court reviews the interpretation of a statute or court rule de novo. *People v Kimble*, 470 Mich 305, 308-309; 684 NW2d 669 (2004).

### B. ANALYSIS

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "Jury instructions must include all elements of the charged offenses and any material issues, defenses, and theories if there is evidence to support them." *People v Czuprynski*, 325 Mich App 449, 456; 926 NW2d 282 (2018). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *Riddle*, 467 Mich at 124. "In the absence of a standard jury instruction, the trial court may only give a special jury instruction if the instruction properly informs the jury of the applicable law." *People v Bush*, 315 Mich App 237,

245; 890 NW2d 370 (2016). Brigolin contends the trial court erred when it denied his request for a special instruction and for M Crim JI 12.4a.

## 1. SPECIAL INSTRUCTION

Brigolin argues the trial court erred when it denied his special jury instruction request, which added the phrase "[defendant] had no legal right to possess" to M Crim JI 12.5. M Crim JI 12.5 states:

(1) The defendant is charged with the crime of knowingly or intentionally possessing [(*state weight*) of a mixture containing] the controlled substance, [*identify controlled substance*]. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant possessed[] [*identify controlled substance*].

(3) Second, that the defendant knew that [he / she] possessed a controlled substance.

[(4) Third, that the substance that the defendant possessed [was in a mixture that] weighed (*state weight*).][] [Footnotes omitted.]

Brigolin does not explain where the additional element in his special instruction should be placed in M Crim JI 12.5.

Brigolin claims his possession of oxycodone and alprazolam was lawful because Cooper authorized him to dispense his medications. Brigolin was convicted of possession of oxycodone and alprazolam under MCL 333.7403(2)(b)(*ii*), which states in relevant part:

(1) A person shall not knowingly or intentionally possess a controlled substance, a controlled substance analogue, or a prescription form unless the controlled substance, controlled substance analogue, or prescription form was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.

(2) A person who violates this section as to:

* * *

(b) Either of the following:

* * *

(*ii*) A controlled substance classified in schedule 1, 2, 3, or 4, except a controlled substance for which a penalty is prescribed in subparagraph (*i*) or subdivision (a), (c), or (d), or a controlled substance analogue is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

This Court explained MCL 333.7403(1) "makes it a crime to possess a controlled substance 'knowingly or intentionally' but creates an exception for a person who has obtained the substance 'from, or pursuant to, a valid prescription . . . .' " *People v Robar*, 321 Mich App 106, 122; 910 NW2d 328 (2017), quoting MCL 333.7403(1). "The simple-possession statute is therefore directed at the evil of mere possession of these substances, unless a person is legally authorized to possess them." *Id*. at 122. "A person's actual or intended use is irrelevant to the crime of simple possession; *unlawful possession is the prohibited conduct*." *Id*. (emphasis added). "The presence of a valid prescription thus constitutes an exemption from prosecution for simple possession, not an element of the offense." *Id*. at 133.

While MCL 333.7403(3) addresses exemptions from prosecution, those exemptions are limited to cases of overdose. See *People v Meeker (On Remand)*, 340 Mich App 559, 565; 986 NW2d 622 (2022) ("Under the unambiguous language of the statute, it is clear that Subsection (3)(a) applies to the individual who overdosed on a controlled substance, and Subsection (3)(b) applies to a separate individual who seeks medical attention for the individual who overdosed.").

Brigolin maintains he was authorized by Cooper to dispense his medications and claimed his statements to Dearing-Manning constituted evidence warranting the special jury instruction. However, Cooper is not capable of authorizing Brigolin under the Public Health Code (PHC), MCL 333.1101 *et seq*.

MCL 333.7303 defines individuals licensed to distribute, prescribe, or dispense controlled substances and states in relevant part:

> (1) A person who manufactures, distributes, prescribes, or dispenses a controlled substance in this state or who proposes to engage in the manufacture, distribution, prescribing, or dispensing of a controlled substance in this state shall obtain a license issued by the administrator in accordance with the rules. . . .

> (2) A person licensed by the administrator under this article to manufacture, distribute, prescribe, dispense, or conduct research with controlled substances may possess, manufacture, distribute, prescribe, dispense, or conduct research with those substances to the extent authorized by its license and in conformity with the other provisions of this article.

> * * *

> (4) The following persons need not be licensed and may lawfully possess controlled substances or prescription forms under this article:

> (a) An agent or employee of a licensed manufacturer, distributor, prescriber, or dispenser of a controlled substance if acting in the usual course of the agent's or employee's business or employment.

> (b) A common or contract carrier or warehouseman, or an employee thereof, whose possession of a controlled substance or prescription form is in the usual course of business or employment.

(c) An ultimate user or agent in possession of a controlled substance or prescription form pursuant to a lawful order of a practitioner or in lawful possession of a schedule 5 substance.

A "practitioner" is defined as: "A prescriber or pharmacist, a scientific investigator as defined by rule of the administrator, *or other person licensed, registered, or otherwise permitted* to distribute, dispense, conduct research with respect to, or administer a controlled substance in the course of professional practice or research in this state. . . ." MCL 333.7109(3)(a) (emphasis added). An "agent" is defined as "an authorized person who acts on behalf of or at the direction of a manufacturer, distributor, dispenser, or prescriber. It does not include a common or contract carrier, public warehouseman, or employee of the carrier or warehouseman." MCL 333.7103(3).

While there was evidence Cooper may have told Brigolin to dispense his medications, there was no evidence Cooper was a prescriber, pharmacist, or scientific investigator. There was also no evidence Cooper was licensed, registered, or permitted to authorize Brigolin to possess the oxycodone or alprazolam. Because Brigolin obtained the oxycodone and alprazolam from Cooper, Brigolin's possession of those medications was unlawful. MCL 333.7303, see also *People v Pegenau*, 447 Mich 278, 297; 523 NW2d 325 (1994) (alteration added) ("Even if [the defendant] had obtained the drugs from a family member or friend, who had obtained them pursuant to a valid prescription, his possession would be unlawful under the act.").

Cooper lacked the ability to authorize Brigolin to possess his medications, and Brigolin was not entitled to the special jury instruction because there was no evidence Brigolin was authorized to possess the medications. See *Riddle*, 467 Mich at 124 ("When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction."). Consequently, the trial court did not err when it denied Brigolin's request for the special jury instruction.

## 2. M CRIM JI 12.4a

Brigolin claims the trial court erred when it rejected his request for M Crim JI 12.4a, arguing he should have been permitted to present his defense regarding Cooper's authorization. M Crim JI 12.4a states:

(1) The defendant has offered evidence that [he / she] [had a valid prescription for / was authorized to (manufacture / deliver / possess / use)] [*identify the controlled substance charged*]. [*Describe evidence.*]

(2) The defendant has the burden of proving [he / she] [had a valid prescription for / was authorized to (manufacture / deliver / possess / use)] [*identify the controlled substance charged*] by a preponderance of the evidence. This means that the evidence must persuade you that it is more likely than not that [he / she] [had a valid prescription for / was authorized to (manufacture / deliver / possess / use)] [*identify the controlled substance charged*].

(3) If you find that the defendant [had a valid prescription for / was authorized to (manufacture / deliver / possess / use)] [identify the controlled substance charged], you must find [him / her] not guilty.

(4) If you find that the defendant [did not have a valid prescription for / was not authorized to (manufacture / deliver / possess / use)] [*identify the controlled substance charged*], you must still determine whether the prosecutor has proved the elements of the charge beyond a reasonable doubt.

Brigolin concedes he did not have a prescription for the oxycodone or alprazolam, but argues Cooper authorized him to dispense his medications. As discussed, Cooper was not identified as one of the enumerated individuals identified in the PHC to distribute or dispense controlled substances. Because Cooper was not a manufacturer, prescriber, or dispenser, Brigolin was not his agent. MCL 333.7103(3).

While there was evidence Cooper permitted Brigolin to possess his medications, there was no evidence Cooper had the authority to do so. Because Brigolin admitted he did not have a valid prescription for the oxycodone or alprazolam, the trial court did not err when it denied his request for M Crim JI 12.4a. *Riddle*, 467 Mich at 124.

## VII. CONCLUSION

For the reasons stated above, we affirm Brigolin's convictions and sentences.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Riordan
/s/ Adrienne N. Young

-18-